# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2077 | **DATE** | 4/9/2003 |
| **CASE TITLE** | Hector J. Bonilla vs. United States Department of Homeland Security | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. Petitioner's emergency petition for writ of habeas corpus is dismissed for lack of subject matter jurisdiction. Case terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | APR 11 2003 | | |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | 4/9/2003 | | |
| | | | date mailed notice | | |
| MD | courtroom deputy's initials | | MD | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| HECTOR J. BONILLA,                               ) | |
|                                                  ) | |
|      Petitioner,        ) | |
|                                                  ) | |
|      v.                 ) | No. 03 C 2077 |
|                                                  ) | Judge Joan H. Lefkow |
| UNITED STATES DEPARTMENT                          ) | |
| OF HOMELAND SECURITY,                             ) | |
| District Director                                ) | |
|                                                  ) | |
|      Respondent.        ) | |

## MEMORANDUM OPINION AND ORDER

On March 20, 2003, petitioner, Hector J. Bonilla, filed an emergency petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 against the "District Director" (the "Director") of the United States Department of Homeland Security ("DHS").[1] Petitioner seeks release from custody and a stay of his removal from the United States to his country of citizenship, El Salvador, until the Board of Immigration Appeals ("BIA") renders a decision on his "Motion to Reopen" his immigration case. For the reasons set forth below, the court dismisses the habeas petition for lack of subject matter jurisdiction.

## BACKGROUND

On or about December 14, 1992, petitioner entered the United States through San Diego, California without inspection. The Immigration and Naturalization Service ("INS"), now the Department of Homeland Security ("DHS"), initiated removal proceedings against petitioner at

---

[1]Since March 1, 2003, the DHS oversees the enforcement and investigative functions of the former Immigration and Naturalization Service ("INS") under the Bureau of Immigration and Customs Enforcement (the "Bureau") whose Acting Director is Eduardo Aguirre, Jr. ("Aguirre"). Although petitioner lists as a respondent the "District Director," the court cannot locate this position within the Bureau. Rather, where the court refers to the "Director," it presumes that Aguirre is the appropriate respondent.

some unspecified point but which petitioner asserts was before April 1, 1997, when the Illegal

Immigration Reform and Immigrant Responsibility Act ("IIRIRA") amendments to the

Immigration and Nationality Act ("INA") became effective. On April 8, 1998, an immigration

judge in Houston, Texas denied petitioner's request for political asylum and granted him the

opportunity to depart the United States voluntarily by August 7, 1998. (Gov't Ex. 1.) The

immigration judge's order further stated,

> Remaining in the United States beyond the authorized date other than because of
> exceptional circumstances beyond your control will result in your being ineligible
> for certain forms of relief under the Immigration and Nationality Act for five years
> from the date of the scheduled departure or the date of the unlawful entry,
> respectively.

(*Id.*) The "certain forms of relief" included voluntary departure, suspension of deportation or

voluntary departure, and adjustment of status or change of status.

The record does not show that petitioner appealed this order to the BIA. Furthermore,

petitioner admits that he did not voluntarily leave the United States. Based on these facts, the

initial order of voluntary departure converted into a final removal order. Indeed, on or about July

13, 1999, the INS attempted to enforce the removal order but petitioner did not appear for his

scheduled departure. (Gov't Ex. 2.)

In the meantime, petitioner represents that he filed an application for Temporary

Protected Status ("TPS") with the INS based on his El Salvadoran citizenship. Petitioner submits

a "Federal Register Notice on Salvadoran TPS," issued March 9, 2001, that allows individuals to

apply for TPS between March 9, 2001 and September 9, 2002. The notice states that the

Attorney General designated a TPS program because (1) El Salvador has endured three

earthquakes resulting in substantial but temporary disruption of living conditions; (2) El Salvador

temporarily is unable to handle the return of its nationals; (3) the government of El Salvador requested TPS designation; and (4) the Attorney General's permission to allow nationals of El Salvador to remain temporarily in the United States is not contrary to national interest. (Pet. Ex. 2.) Subsequently, the Attorney General extended the TPS program until September 9, 2003, with an application filing period between September 9, 2002 and November 12, 2002. *See* "Extension of the Designation of El Salvador Under the Temporary Protected Status Program," 67 FR 46000, 2002 WL 1473076 (F.R.).

Petitioner represents without evidence that he was granted TPS, including employment authorization and additional extensions, until 2002. According to petitioner, he renewed his TPS application sometime in 2002. When he did not hear back from the INS, he went to the INS Indianapolis office to inquire about his application status. There, the INS took petitioner into custody based on the final removal order. Petitioner attaches an exhibit to show that he filed a new TPS application in mid-March 2003, listing his address as "Care of Gilma Bonilla," at 3185 Eagledale Drive, Indianapolis, Indiana 46222.

The Director denies that the INS ever approved TPS for petitioner and that petitioner has a TPS application on file. Rather, he provides an exhibit showing that the INS sent petitioner a letter, dated December 13, 2001 and addressed to petitioner at 3185 Eagledale St., Indianapolis, Indiana 46222, that stated petitioner failed "to submit additional evidence in support of the application or petition." (Gov't Ex. 4.) The letter provided that petitioner had 30 days to file a new application with a new fee, which petitioner failed to do. Based on its evidence, the Director asserts that petitioner only attempted to submit an application but never received TPS.

3

## DISCUSSION

Petitioner claims that the court should grant his habeas petition because his new TPS application will be deemed abandoned if the Director deports him. Petitioner also rests his habeas petition on the fact that he has been in the United States for over 10 years and he will apply for lawful permanent resident ("LPR") status because he is the beneficiary of a visa petition filed by his father.

The Director responds that the habeas petition is no more than a disguised challenge to a final removal order and thus this court lacks jurisdiction under 8 U.S.C. § 1252(g) ("no court shall have jurisdiction to hear any cause or claim by or on behalf of an alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders . . . ."). The Director concedes that "[a]n exception to this statutory preclusion is permitted only in rare cases that present substantial constitutional issues or bizarre miscarriages of justice." *Chapinski* v. *Ziglar*, 278 F.3d 718, 721 (7th Cir. 2002). The Director asserts that petitioner does not meet either of these exceptions because petitioner's own failure to depart voluntarily from the United States or appeal the immigration judge's order to the BIA led to the conversion of the initial order for voluntary departure into a final removal order.

Petitioner argues that this court has jurisdiction because his removal proceedings occurred prior to the enactment of the IIRIRA amendments to the INA. "While the IIRIRA amendments generally apply only to removal proceedings instituted on or after its effective date of April 1, 1997, . . . § 1252(g) is fully retroactive[.]" *Fedorca* v. *Perryman*, 197 F.3d 236, 240 (7th Cir.

(7th Cir. 1999).<sup>2</sup> Under § 1252(g), because petitioner seeks habeas relief in the form of a stay of

his removal order, this court lacks subject matter jurisdiction to review the habeas petition. *See,*

*e.g., Fedorca,* 197 F.3d at 239-40 ("Fedorca seeks as relief only a stay of deportation pending his

appeal to the BIA--or in other words, review of the decision to execute his deportation, which is

barred by §§ 1252(g)."); *Sharif ex rel. Sharif* v. *Ashcroft,* 280 F.3d 786, 786 (7th Cir. 2002) ("A

request for a stay of removal 'arises from' the Attorney General's decision (reflected by the bag-

and-baggage letter) to execute a removal order.").<sup>3</sup>

    Petitioner, however, argues that his petition presents facts that demonstrate a bizarre

miscarriage of justice. *See Chapinski,* 278 F.3d at 721. The court recognizes that, despite the

removal order preventing a change in status, petitioner contends that he received TPS and simply

failed to renew it. If petitioner initially received TPS, then he initially was not subject to

detention and removal during that time period. *See* 8 U.S.C. §§ 1254a(a)(1)(A) (stating the

Attorney General may grant the alien TPS and "shall not remove the alien from the United States

---

    <sup>2</sup>Petitioner relies heavily on *Sofinet* v. *INS,* 188 F.3d 703, 705-06 (7th Cir. 1999), where the Seventh Circuit granted a stay of the petitioner's removal. In *Sofinet,* after petitioner exhausted administrative review, he filed a notice of appeal with the Court of Appeals. The Court of Appeals retained jurisdiction under 8 U.S.C. § 1105a(a) subject to the transitional rules that provided for judicial review before the enactment of the IIRIRA. As indicated above, these transitional rules are not applicable here because § 1252(g) is retroactive.

    <sup>3</sup>In addition, petitioner argues that because § 1252(g) concerns only the Attorney General's and not the DHS's actions, this court retains jurisdiction under § 2241. Section 1512(a) of the Homeland Security Act of 2002 ("HSA"), which created the DHS, states that the "[c]ompleted administrative actions of an agency shall not be affected by the enactment of this Act . . . but shall continue in effect according to their terms . . . in accordance with . . . a court of competent jurisdiction[.]" 6 U.S.C. § 552(a) (further stating "complete administrative action includes orders, determinations, rules, regulations . . ."). Moreover § 1512(d) of the HSA states that "references relating to an agency that is transferred to the [DHS] in statutes . . . that precede such transfer or the effective date of this Act shall be deemed to refer, as appropriate, to the [DHS] . . . ." 6 U.S.C. § 552(d); *see also* 6 U.S.C. § 557 ("With respect to any function transferred by or under this Act (including a reorganization plan . . .) and exercised on or after the effective date of this Act, reference in any other Federal law to any . . . officer . . . the functions of which are so transferred shall be deemed to refer to the Secretary, other official, or component of the [DHS] to which such function is transferred."). Based on these provisions, although § 1252(g) refers to the Attorney General, it applies to the DHS.

during the period in which such status is in effect") and (d)(4) (stating an alien provided TPS

"shall not be detained by the Attorney General on the basis of the alien's immigration status").

Nonetheless, petitioner concedes that he did not timely submit additional evidence for his

renewal TPS application. As his excuse, petitioner vaguely states "[it is unknown whether [he]

ever received the request for evidence." (Pet. ¶ 7.)

Whether petitioner is able to rebut the presumption that the Director properly addressed

the December 13, 2001 letter to him is arguable. *See Hayes* v. *Potter*, 310 F.3d 979, 982 (7th Cir.

2002) ("We will generally presume timely delivery of properly addressed mail"). The December

13, 2001 letter is addressed to petitioner at "3185 Eagledale St." whereas, in his new TPS

application, petitioner lists the address as "Care of Gilma Bonilla" at "3185 Eagledale Drive."

Even though the Director's December 13, 2001 letter does not show it was sent "Care of Gilma

Bonilla" to "3185 Eagledale Drive," petitioner fails to show that he provided this address

information in his original TPS application. Moreover, based on this court's own research, there

does not appear to be an actual distinction between "3185 Eagledale St." and "3185 Eagledale

Drive." Nonetheless, although more evidence such as a copy of the original TPS application

and/or a sworn affidavit taken under oath by petitioner would be useful, the court simply will

resolve this issue in petitioner's favor.

Assuming that the December 13, 2001 letter was not properly addressed and thus not

received, petitioner still cannot show that he is entitled to habeas relief. Petitioner did not appeal

or comply with the initial order for voluntary departure and thus he became automatically subject

to a removal order. The removal order states that petitioner cannot change his status for five

years or until August 6, 2003. Whether petitioner may change his status to TPS (despite the late

filing and based on the improper address on the December 13, 2001 letter) or LPR in spite of this removal order is not for this court to decide. Rather, the adjudication of petitioner's habeas claims falls within the administrative review process under the jurisdiction of the Attorney General and the DHS. *See generally* 8 U.S.C. § 1254a(c)(2)(A) (Waiver of certain grounds for inadmissibility for TPS); 8 C.F.R. § 240.62(b) (applications for suspension of deportation or special rule cancellation of removal. . . .). Clearly, this court lacks subject matter jurisdiction to review the habeas petition.

## ORDER

Wherefore, for the reasons set forth above, the court dismisses petitioner's emergency petition for writ of habeas corpus for lack of subject matter jurisdiction. This case is terminated.

ENTER:

JOAN HUMPHREY LEFKOW
United States District Judge

Dated: April 9, 2003